## CHRISTIAN F. WENDLANDT v. SECURITY STATE BANK OF PAYNESVILLE.[1]

### January 31, 1919.

### No. 21,070.

**Owner estopped from claiming title to land.**

> The finding of fact, that plaintiff is estopped by his conduct from asserting title to the land as against the mortgage of defendant bank, is sustained by the evidence.

Action in the district court for Stearns county to cancel a certain deed and mortgage. The facts are stated in the opinion. The case was tried before Roeser, J., who made findings and ordered judgment granting plaintiff a prior lien on the premises for $2,500, and interest, which should be paid or tendered to plaintiff within 30 days, and, upon such payment or tender, defendant bank should be subrogated to all of plaintiff's rights based on such prior lien, and granting defendant bank a sec-

[1]Reported in 170 N. W. 612.

ond lien for $7,000.   From an order denying his motion for a new trial, plaintiff appealed.   Affirmed.

J. D. Sullivan, for appellant.

R. B. Brower, for respondent.

TAYLOR, C.

Plaintiff possessed several farms of 160 acres each located near the village of Paynesville and worth from $80 to $100 per acre, and also a general store in the village.   He did his banking business with defendant bank of which William E. Schultz was the cashier and active officer. In 1905 he turned the store and a small stock of goods over to his son John, who had been his assistant in the store prior thereto.   About a year later another son, Henry, went into partnership with John and thereafter the two carried on the business as partners with some assistance from their father.   They also did their banking business with defendant bank.   Plaintiff had four other sons, William, Emil, Edward, and Aaron, all of age and in business for themselves, and to whom he had made advancements.   In 1907 he deeded a farm to William.   In July, 1912, for the purpose of making a further partial distribution of his property among his sons, he executed four deeds.   By three of these deeds he gave a farm to each of his sons Emil, Edward and Aaron in severalty; by the fourth deed he gave a farm to his sons John and Henry, jointly.   He also prepared four notes and mortgages, each for the sum of $2,500, ready for execution by the respective grantees in the deeds He placed all these documents in the bank and directed the bank to notify Emil, Edward and Aaron to come to the bank and execute their notes and mortgages and get their deeds.   The bank notified these three as directed and they came in, executed their respective notes and mortgages, and took their respective deeds.

Plaintiff gave the bank no instructions concerning the deed to John and Henry or the note and mortgage prepared for them to execute, but merely left these papers in the bank with the statement that he would see John and Henry himself and that the bank need not notify them. Nothing further was said or done concerning either deed or mortgage until four years later when the bank placed the deed on record as hereinafter stated.   John and Henry borrowed money from the bank from

time to time, and in 1912 owed the bank about $4,000. Thereafter they made several business ventures which proved unprofitable, and in 1915 they owed the bank about $12,000 of which about $5,000 was secured. On September 4, 1915, they executed a mortgage to the bank of the farm above mentioned, in the sum of $7,000, to secure the remainder of this indebtedness. On December 7, 1916, the bank placed the deed to John and Henry, and the mortgage from them to itself, on record in the office of the register of deeds. Shortly thereafter plaintiff brought this action to have both the deed and the mortgage canceled, on the ground that John and Henry had never become entitled to the deed, for the reason that they had failed to execute the note and mortgage to plaintiff placed in the bank with the deed. The sons John and Henry interposed no answer and made no defense, and the controversy is solely between plaintiff and the bank. The trial court made extended findings of fact and determined therefrom that plaintiff has a first lien on the farm for the sum of $2,500 and interest, and that the bank has a second lien thereon for the sum of $7,000 and interest under its mortgage from John and Henry.

Plaintiff moved for a new trial and appealed from the order denying his motion.

That the findings of fact are sufficient to sustain the conclusions of law is not questioned, but plaintiff contends that the decisive findings of fact are not sustained by the evidence. The particular findings challenged are those set forth in the following excerpt from the thirteenth paragraph of the decision, viz.:

"That the plaintiff, by his conduct in leaving said deed with said bank during such a long period of time, and in giving possession of said land to the two sons, and in clothing them with the apparent ownership thereof, and by all his other actions and statements, as hereinbefore stated, has given the said bank reasonable ground to believe, and it did so believe, that the deed was intended to convey absolute title to the two sons from the time it was left in said bank, and was not subject to be recalled or canceled, and that said bank, in reliance on such belief, and with his knowledge has advanced this loan of money as represented by said mortgage to said sons; and that it would be, under all the circumstances, unjust and inequitable to now cancel said deed and its record

to the prejudice of said bank. That the acts, conduct and statements of plaintiff in reference to said land and the rights of his sons in the same, have estopped him from claiming that said deed, by its deposit in said bank as aforesaid, did not pass title to his sons, at least as far as the claim of the bank is concerned."

It is the province of the trial court to weigh the evidence and determine the facts, and this court accepts as true the facts found by that court if there is any substantial evidence to sustain them.

The evidence shows that plaintiff turned the farm over to John and Henry at the time the deed was executed in 1912; that they have had exclusive possession of it and have received all the rents and profits from it ever since; that they have paid the taxes on it each year and with plaintiff's knowledge have made valuable permanent improvements on it with money obtained from the bank, and that, since the making of the deed, plaintiff has recognized them as the owners of the farm. There is also evidence tending to show that plaintiff had had a controversy with his son Emil over an indebtedness which he claimed that Emil owed him; that he wanted the mortgage from Emil for the purpose of compelling Emil to pay this indebtedness, and that he prepared similar mortgages for all the boys so that Emil would sign his, thinking that all were required to pay the same amount. There is also evidence tending to show that plaintiff did not intend to exact a mortgage from John and Henry for the reason that he had given each of the other boys a farm, but had only given John and Henry a farm between them, and that, in order to make the property given them equal in value to the property given the others, he had in fact made a payment to them instead of requiring them to make a payment to him.

Plaintiff's own testimony leaves his intention in respect to the mortgage from John and Henry somewhat uncertain. We quote the following from his direct examination by his own attorney:

"Q. Did you ever tell Mr. Schultz or anybody at the bank there that you never intended to collect that twenty-five hundred dollar note and mortgage that was left there? A. If I get my things as belong to me then maybe I don't need it. I don't know if my life—I don't know how long I live; maybe I need it and maybe I don't need it; if I die pretty soon then they don't need to pay it; but I don't know how long

I live here in this world.  Q. That is the way you felt about it?  A. Yes, sir."

There is also evidence tending to show that plaintiff recognized that the farm belonged to John and Henry at the time he brought this action, and that he made an arrangement with them to make no defense, with the understanding that, if he succeeded in recovering the farm and cutting out the mortgage of the bank, he would hold it for them and turn it back to them freed from the mortgage.

We find substantial support in the evidence for the findings challenged and the order appealed from is affirmed.